# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEDROCK FINANCIAL CORPORATION, a California Corporation,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>  v.<br><br>THE UNITED STATES OF AMERICA*;* and Does 1 through 50, inclusive,<br><br>    Defendants, Counterclaimant, and Third-Party Plaintiff,<br><br>  v.<br><br>FIRST AMERICAN TITLE COMPANY and FIRST AMERICAN TITLE INSURANCE COMPANY, California Corporations,<br><br>    Third-Party Defendants. | Case No. 1:10-cv-01055-MJS<br><br>ORDER GRANTING THIRD-PARTY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 124) |

## I.   Introduction

When third-party defendants First American Title Company and First American Title Insurance Company (jointly, "First American") closed a refinance loan from Plaintiff

1

Bedrock Financial Corporation ("Bedrock") to nonparties Jose M. and Irma Fuentes ("Taxpayers"), they wore two hats. On the onehand, as they emphasize in their arguments in opposition to summary judgment, First American acted as Bedrock's title insurer, a critical role since Bedrock's loan was secured by a deed of trust on Mr. Fuentes' property, but a role in which First American's duty ran only to Bedrock. However, First American also acted as escrow agent in the loan's closing, and in that capacity was responsible for the pay-off of existing liens against the property. In this latter role, First American had to act in their insured's interest but with due regard to applicable law, including that establishing lien priorities. The United States of America, the third-party plaintiff in this action (the "Government"), contends that in its escrow-agent role, First American converted or wasted the principal of the loan to which its tax lien against Mr. Fuentes attached at the time of closing of the loan.

Despite First American's attempts to cast the legal ramifications of its actions as factual disputes, no one can legitimately disagree about the occurrences underlying the dispute that gave rise to this action. The sole dispute is legal: whether First American's failure to disburse loan funds to satisfy the tax lien in the course of the closing constituted conversion or waste of the property secured by the tax lien. The Court holds that it did, and it accordingly orders summary judgment in favor of the Government.

## II.  Procedural History

On May 3, 2010, Bedrock filed suit against the Government in Merced County Superior Court for equitable subrogation, declaratory relief giving it first priority over the tax lien, and foreclosure of the Deed of Trust. The Government removed the case to federal court on June 8, 2010. On November 13, 2012, the Court granted Bedrock's motion for summary judgment, granting it equitable subrogation and an equitable lien in the amount of $171,106.85.

On December 31, 2012, the Government filed a third amended third-party complaint, claiming that First American intentionally and negligently impaired the federal tax lien, committed bad-faith waste by distributing the proceeds of the taxpayers' refinancing to other parties in disregard of the Government's interest, and converted funds subject to the federal tax lien. First American moved to dismiss. On May 21, 2013, the Court held that the third amended third-party complaint stated cognizable claims of conversion and waste, but dismissed the Government's claims of negligent and intentional impairment of security.

On December 2, 2013, the Government filed the motion for summary judgment that is the subject of this order.

## III.  **Undisputed Facts**

Based on the Government's statement of undisputed facts and First American's response to that statement, the Court finds the following to be undisputed facts in this action:

On September 19, 2005, the Government made a timely assessment for the 2004 tax year of $38,234.00, including various statutory additions and interest, against the Taxpayers. The Taxpayers are not parties to this case.

Taxpayers owned real property in Atwater, Merced County, California (APN 004-110-005), which was subject to a deed of trust in favor of R.K. Lowe, Trustee of the RK Lowe Revocable Trust, dated August 12, 1997. The Deed of Trust was recorded in Merced County in August 2006.

In or about July 3, 2007, in connection with foreclosure of the Lowe deed of trust, First American issued a Trustee's Sale Guarantee relating to the Atwater property.

On October 24, 2007, the Government recorded a notice of federal tax lien against the Taxpayers in the Official Records of Merced County, California, as Document No. 2007-057520. According to the notice of tax lien, Taxpayers then owed $42,458.12 plus

statutory accruals on their 2004 federal income taxes.  Until February 2008, the tax lien was second in priority to the Lowe deed of trust, but senior to all other obligations on the Atwater property.

On or about December 5, 2007, First American issued a sales endorsement to the previously issued Trustee's Sale Guarantee that identified the October 2007 notice of federal tax lien against Taxpayers as relating to the Atwater property.

In 2008, Bedrock loaned Taxpayers $243,000.00 to refinance the loan secured by the Lowe deed of trust.  Bedrock and Taxpayers engaged First American Title Company to act as escrow agent for the transaction (file number 50062991235).  A preliminary title report on the Atwater property issued on or about January 11, 2008.  Although the search package for the preliminary report identified the notice of federal tax lien recorded in October 2007 against the Taxpayers, the preliminary title report did not mention the October 2007 notice of federal tax lien.  First American has no record of making any contact with the IRS nor of sending a demand for pay-off to the IRS during the escrow period.

Exception 13 to the preliminary title report required the Taxpayers to provide a statement of information to complete the preliminary title report.  In addition, escrow instructions dated January 31, 2008, directed First American that Bedrock was "to be in first position" after closing of escrow.

Nonetheless, on or about February 5, 2008, First American closed the Bedrock refinance loan and disbursed the proceeds without Taxpayers' ever having completed and submitted a statement of information.  First American concedes that a properly completed statement of information would have identified the notice of federal tax lien.  It further concedes that its escrow officer erred by not obtaining and reviewing Taxpayer's statement of information before closing escrow.  Of the $243,000.00 loan proceeds, First American

4

disbursed $171,106.85 to pay off principal and interest on the loan secured by the Lowe deed of trust.

First American did not pay any portion of the Bedrock refinance loan proceeds to the Government on account of its federal tax lien. After the Bedrock refinance loan had closed, the notice of federal tax lien was in first position, and the deed of trust to Bedrock was in second position. As of January 2, 2014, the outstanding balance of Taxpayers' 2004 federal income tax liabilities is $24,354.75.

## IV.   Summary Judgment

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c)(2); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v.Catrett*, 477 U.S. 317, 323 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248; *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

When the moving party will have the burden of proof on an issue at trial, it must demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun*, 509 F.3d at 984. When the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential

element of the non-moving party's claim or merely by pointing out that no evidence supports an essential element of the non-moving party's claim. *See Soremekun*, 509 F.3d at 984; *Nissan Fire and Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Id.* at 1102-03. If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Id.* at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.) *(quoting* F.R.Civ.P. 56(e)), *cert. denied*, 555 U.S. 827 (2008).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Anderson*, 477 U.S. at 255; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003). Nonetheless, inferences are not drawn out of the air, and the opposing party bears the obligation of producing a factual predicate from which the inference may be drawn. *See Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1163 (E.D.Cal. 2008), *aff'd*, 340 Fed.Appx. 377 (9th Cir. 2009); *UMG Recordings, Inc. v. Sinnott*, 300 F.Supp.2d 993, 997 (E.D.Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." *del Carmen Guadelupe v. Negron Agosto*, 299 F.3d 15, 23 (1st Cir. 2002).

A court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, even though a court is not required to examine the entire file for evidence establishing a genuine issue of material fact when the opposing party has not set forth the evidence with adequate references. *See Southern California*

*Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  *See Nissan Fire & Marine*, 210 F.3d at 1103.

**V.     Conversion**

The Government contends that because First American disbursed the proceeds of Taxpayers' loan without regard to the tax lien, it is liable for the remaining balance of $24,354.79 pursuant to the tort of conversion.  First American responds that, because the funds were secured by a tax lien of which they had no knowledge, it cannot be liable as a matter of law for converting the funds to which the tax lien attached.  The Court rejects First American's arguments, finding them liable to the Government under the tort of conversion.

Conversion is the wrongful exercise of dominion over the property of another. *Steele v. Marsicano*, 102 Cal. 666, 669 (1894).  The elements of a cause of action for conversion are (1) the plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of the plaintiff's property rights, and (3) damages.  *Baldwin v. Marina City Properties, Inc.*, 79 Cal.App.3d 393, 410 (1978).

**A.     Property Rights**

Whenever the government asserts a tax lien under 26 U.S.C. § 6321, the threshold question is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach."  *Aquilino v. United States*, 363 U.S. 509, 512 (1960).  Because § 6321 "creates no property rights but merely attaches consequences, federally defined, to rights created under state law," California law determines the Taxpayers' property rights to the funds.  *See United States v. Bess*, 357 U.S. 51, 55 (1958).

A federal tax lien arises when unpaid taxes are assessed.  26 U.S.C. § 6322.  It attaches to all of the delinquent taxpayer's real and personal property and remains attached until either the tax is paid or the lien becomes unenforceable due to a lapse of time.  *See* 26 U.S.C. § 6322; *United States v. Donahue Industries, Inc.*, 905 F.2d 1325, 1330 (9th Cir.

7

1990). An assessment of unpaid taxes arises against a taxpayer and encumbers all of the taxpayer's real and personal property, except that specifically exempted by law, from the time the assessment is made until the tax is paid or the assessment becomes legally unenforceable. 26 U.S.C. § 6321. It also attaches to after-acquired property. *Bensinger v. Davidson*, 147 F.Supp. 240, 245 (S.D.Cal. 1956).

If a taxpayer has property or property rights in monies to be disbursed by an escrow agent such as a title company, as Taxpayers had in this instance, the tax lien attaches to those monies. *United States v. Allen*, 207 F.Supp. 545, 546 (E.D.Wash. 1962). "[A]fter a transaction involving property encumbered by a tax lien, '[t]he lien reattaches to the thing *and to whatever is substituted for it*.'" *United States v. Henshaw*, 388 F.3d 738, 742 (10th Cir. 2004), *quoting Phelps v. United States*, 421 U.S. 330, 334 (1975).

A federal tax lien attaches to any advance of funds to a taxpayer. *Nomellini Constr. Co. v. United States,* 328 F.Supp. 1281, 1287 (E.D.Cal. 1971). When a taxpayer has a contractual right to funds, such as the right to borrow against, assign, or pledge the cash value of an insurance policy, the taxpayer has property or rights to property in those funds. *Bess*, 357 U.S. at 56. In this case, Taxpayers had contractual rights to funds equal to the proceeds of the note secured by the deed of trust to Bedrock ($243,000.00), subject to lien of the RK Lowe deed of trust and the federal tax lien. When the refinance contract closed, American Title, as escrow agent, disbursed the proceeds on Taxpayers' behalf.

"[O]nce the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's property or rights to property." *Aquilino*, 363 U.S. at 513 (*internal quotation omitted*). A federal tax lien attaches to any advance of funds to a taxpayer. *Nomellini,* 328 F.Supp. at 1287. "Once in the hands of the taxpayer . . . . the money became property enveloped with the government's liens." *Id.* That American Title acted as Taxpayers' agent to disburse the proceeds of the refinance loan did not alter Taxpayers' ownership of those funds. Thus, at the time of the alleged conversion, the

8

1  Government had an ownership or right to the disbursed funds, satisfying the first element of
2  the tort of conversion.

3  "[A] third party possessing property or rights to property belonging to a taxpayer
4  holds such property subject to the lien, unless the third party has a prior lien or comes
5  within one of the exceptions listed in 26 U.S.C. § 6323."  *United States v. Bank of Celina*,
6  721 F.2d 163, 166 (6th Cir. 1983).

7  **B.     Wrongful Act or Disposition**

8  First American concedes that an escrow agent wrongfully disposes of funds subject
9  to a tax lien when it *knowingly* disburses those funds without regard to the governmental
10 interest.  Since it did not know of the tax lien against Taxpayer, First American reasons, it
11 could not have wrongfully acted against or disposed of the plaintiff's property or property
12 rights.  First American bases its conclusion on two propositions: (1) without disclosure from
13 the Taxpayer, First American could not have known that the federal tax lien was against the
14 Taxpayer and, thus, affected the property that was the subject of the refinance loan; and (2)
15 under California law, First American did not need to address the tax lien in the preliminary
16 title policy.

17 Remarkably, even though its title searcher(s) had twice reported the tax lien's
18 existence in relation to transactions involving Taxpayer and the Atwater property, First
19 American insists that it could not have knowledge since the tax lien could have been
20 against an individual with the same name, or a similar name, as Taxpayers.  Since
21 Taxpayers never returned the statement of information noted as exception number 13 on
22 the preliminary title report and since First American's escrow agent closed the refinance
23 loan without the statement of information, First American maintains that it could not have
24 known that the lien applied to the Atwater property to which First American's insured,
25 Bedrock, was receiving a deed of trust and to which First American was insuring clear title.

26 The Government correctly disputes First American's assumption that it could not
27 have wrongfully acted or disposed of the plaintiff's property rights absent actual knowledge
28 of the federal tax lien.  Generally, to satisfy the second element of a claim for conversion,

9

knowledge is immaterial: A defendant need do nothing more than exercise dominion and control over the plaintiff's property, resulting in great loss to plaintiff.  *Poggi v. Scott*, 167 Cal. 372, 376 (1914).

> The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant.  It rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results.  Therefore, neither good nor bad faith, neither care nor negligence, nor knowledge or ignorance, are of the gist of the action.
>
> *Id.* at 375.

*Accord Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (1998).  "In California, conversion is a strict liability tort: Questions of good faith, lack of knowledge, and motive are ordinarily immaterial."  *In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003).

In arguing that knowledge is required, First American relies on three cases in which the defendants had actual knowledge of the lien that each was charged with converting: *United States v. North Side Deposit Bank*, 569 F.Supp. 948, 952 (W.D. Pa. 1983); *Nomellini*, 328 F.Supp. at 1285; and *Allen*, 207 F.Supp. at 550.  These cases do not compel a finding that knowledge is a necessary element of conversion.  Although each court noted in *dicta* that the converting tortfeasor knew of the federal tax lien, none of the courts held that such knowledge was an element of the tort of conversion.

Even if knowledge of the lien were required as an element of conversion, under California law, First American had constructive notice of the federal tax lien.  "Every conveyance of real property . . . . therein acknowledge and proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees . . . ." California Civil Code § 1213.  "The term 'conveyance, ' as used in Sections 1213 and 1214, embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or incumbered, or by which the title to any real property may be affected, except wills."  California Civil Code § 1215.  "Constructive notice 'is the

equivalent of *actual knowledge*; i.e., knowledge of the contents is conclusively presumed.'" *Citizens for Covenant Compliance v. Anderson*, 12 Cal.4th 345, 355 (1995), *quoting* 4 Witkin, Summary of California Law, Real Property, § 203 at 408 (9th ed. 1987).

In other words, even if First American could not have been certain that the taxpayer whose property was encumbered by the federal tax lien was the taxpayer who owned the Atwater property, California law charged it with that knowledge. The policy in favor of such a statute is self-evident: Requiring a purchaser or mortgagee to search record title holds the seller or mortgagor accountable to debtors holding an interest in the subject property before the property's ownership changes and protects the purchaser or mortgagee from a seller or mortgagor who would convey or pledge property worth less than its apparent value because of undisclosed liens.

Nor does First American's peculiar argument regarding California's statutory provisions and the language of the complaint circumvent the elements of conversion. State law pronouncements regarding the purpose of a preliminary title report (which are for underwriting decisions only, per California Insurance Code § 12340.11) do not control the determination of whether, in the course of closing escrow, First American "exercise[d] dominion and control over the plaintiff's property," satisfying the second element of conversion. The undisputed facts indicate that in its role as escrow agent, after paying off the first priority creditor, First American disregarded the Government's tax lien, which had second priority, and wrongfully disbursed the proceeds to pay junior creditors and non-lienable costs of closing, then released the balance to Taxpayers. Its actions satisfy the second element of conversion.

### C. Damages

Finally, there is no dispute that First American wrongfully diverted $42,458.12 subject to the federal tax lien. When an escrow agent disburses funds to pay junior and non-lienable debts instead of paying off a federal tax lien, the escrow agent is liable to the government up to the amount of the payments wrongfully made to others. *Allen*, 207 F.Supp. at 547, 550. Since closing of the refinance loan, however, the Government has

recovered a portion of the outstanding debt from other sources. As of January 2014, the unrecovered balance totaled $24,354.75.

### D. Summary

Undisputed facts establish the elements necessary to prove that First American converted $42,458.12 subject to the federal tax lien. To determine the amount of damages, the Court shall schedule an evidentiary hearing at which the Government may document the unrecovered balance of the tax lien that is now due.

## VI. Waste and Impairment of Security

In the alternative to its conversion claim, the Government alleges that First American is liable to it under the doctrines of waste or impairment of security. First American again counters that it cannot have committed waste when it lacked knowledge of the federal tax lien. Having concluded that First American is liable for conversion of the refinance funds to which the federal tax lien attached, the Court need not reach this claim. Because of First American's constructive knowledge of the lien under California law, however, its disbursement of funds subject to the federal tax lien also constituted waste.

"[W]aste is conduct on the part of the person in possession of property that substantially impairs a security interest in the property." *Fait v. New Faze Development, Inc.*, 207 Cal.App.4th 284, 295 (2012). "[W]aste is, functionally, a part of the law which keeps in balance the conflicting desires of persons having interest in the same land." *Cornelison v. Kornbluth*, 15 Cal.3d 590, 598 (1975), *quoting* 5 Powell on Real Property § 636 at 5-6 (1974) (*internal quotation marks omitted*). "A holder of a security interest may maintain an action for impairment of a security by a third party tortfeasors." *Baldwin*, 79 Cal.App.3d at 403. The general rule applies not only to security interests in real property but to security interests in personal property. *Id.* Accordingly, the government can pursue a claim of waste against a third-party escrow agent that disbursed funds subject to a federal tax lien.

As discussed above in the conversion analysis, First American had constructive knowledge of the federal tax lien by virtue of the Government's recording it in compliance

with California state law.  California Civil Code §§ 1213 and 1215.   Thus, even though waste is not a strict liability tort, undisputed evidence establishes that First American wasted the refinance loan proceeds to which the federal tax lien attached by disbursing them to debtors with junior or un-lienable debts and to Taxpayers.

**VII.    Mitigation**

First American argues that the Government should be denied recovery since it failed to mitigate damages by foreclosing upon the Atwater property before its market value fell beneath the combined sums owed to Bedrock and to the Government.  The Government responds that a secured creditor is not required to proceed against other property subject to its lien as a prerequisite to suing a converter.

When a tortious act threatens damage, an injured party is required to use reasonable care and diligence to minimize the loss.  *Jarchow v. Transamerica Title Ins. Co.,* 48 Cal.App.3d 917, 949 (1975), *overruled on other grounds*, *Soto v. Royal Globe Ins. Corp.,* 184 Cal.App.3d 420 (1986).  A plaintiff is not entitled to compensation for damages that could have been avoided with reasonable effort or cost.  *Id.*  For example, damages arising from negligent construction of a custom home could have been reduced had the homeowner-plaintiffs promptly repaired defects relating to site drainage and to heating and air conditioning system installation.  *Shaffer v. Debbas*, 17 Cal.App.4th 33, 41 (1993).  But mitigation is not required when the innocent party could mitigate only by surrendering important and valuable rights.  *Seaboard Music Co. v. Germano*, 24 Cal.App.3d 618, 622-23 (1972).  Nor must the aggrieved party mitigate damages through actions that are unreasonable or impracticable.  *Valle de Oro Bank v. Gamboa*, 26 Cal.App.4th 1686, 1691 (1994).

Other than general platitudes, First American provides no authority for the proposition that the Government is required to mitigate damages caused by a third party's conversion of property subject to a federal tax lien by foreclosing on real property that is also subject to the lien.  "Although no reported California case has dealt with the application of mitigation of damages to a lender's action to collect on a contractual obligation for

repayment of a loan where collateral to a loan was destroyed and the lender did not exercise a contractual option to insure against the loss, case law analysis discloses the doctrine is used sparingly in the contract or commercial context." *Valle de Oro*, 26 Cal.App.4th at 1691.  "It is no defense to an action by mortgagees against a stranger for causing the loss of their lien upon some of the mortgaged property that it still covers an amount sufficient to secure the payment of the mortgage debt." *Bank of Havelock v. Western Union Telegraph Co.*, 141 F. 522 (8th Cir. 1905) "The mortgagee need not establish that, like a honey-bee, he has flitted from security flower to security flower, and still has not been able to collect sufficient property pollen to satisfy his hunger." *United States v. Matthews*, 244 F.2d 626, 629 (9th Cir. 1957).

The issue of mitigation is a question of fact for the court.  *Id.*  The party asserting lack of mitigation as an affirmative defense must prove its contentions.  *Mayes v. Sturdy Northern Sales, Inc.*, 91 Cal.App.3d 69, 86 (1979), *overruled on other grounds*, 7 Cal.4th 503 (1994).  Here, First American asserts that the Atwater property was of sufficient value following the refinance to satisfy the Government's lien but offers no competent proof of the property's value at any point before or after the transaction.  Nor did First American provide any evidence that undertaking the foreclosure of the Atwater property would have been reasonable and practicable.  Finally, First American claims that the Government knew of foreclosure proceedings against the property before the refinance and yet took no action to enforce the lien, but it provides no evidence sufficient to support such assertions.

First American having failed to establish their defense legally and factually, the Court declines to interpose the doctrine of mitigation to excuse its conversion of the Government's interest in the refinance proceeds.

**VIII.   Conclusion and Judgment**

Accordingly, for the reasons set forth above, The Court hereby ORDERS:

1.   The Government's motion for summary judgment on its claims of conversion  and waste is granted.

2. An evidentiary hearing is set for May 28, 2014, at 9:30 a.m. in Courtroom 6 of the U.S. Courthouse to determine the amount of damages to be ordered in the judgment against First America.

3. No later than April 30, 2014, the Government shall file a written brief setting forth its position on the issue of such damages and the evidence upon which it will rely in support of that position. First American shall have until May 14, 2014 to file an opposition brief, opposing evidence, and a statement of objections, if any, to the Government's proposed evidence. The Government shall have until May 21, 2014, to file a reply if and as necessary.

IT IS SO ORDERED.

Dated:   April 17, 2014                         /s/ *Michael J. Seng*
                                                UNITED STATES MAGISTRATE JUDGE