IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BEDROCK FINANCIAL, INC.,**<br><br>                         Plaintiff,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>                         Defendant,<br><br>v.<br><br>**FIRST AMERICAN TITLE COMPANY, et al.,**<br><br>                         Third-Party-Defendant, | 1:10-cv-01055 MJS HC<br><br>**ORDER GRANTING MOTION TO VACATE ORDERS AND JUDGMENTS PURSUANT TO FED. R. CIV. P. 60.**<br><br>**(Doc. 151.)** |

**I.      INTRODUCTION**

This action was filed by Bedrock Financial, Inc. ("Bedrock"), against the United States Internal Revenue Service ("IRS") in Merced County California Superior Court. Bedrock, holder of a deed of trust to real property sought to be subrogated to an earlier mortgage so as to establish priority over a federal tax lien attached to the property. The United States ("Government") removed the suit to this Court. The Court granted Bedrock's motion for summary judgment, awarding it equitable subrogation and an equitable lien in the amount of $171,106.85. The Court also granted the Government

judgment against First American Title Company and First American Title Insurance Company (collectively, "First American") on its conversion and waste claims in the amount of $24,648.76 plus interest.

First American appealed and the Government cross-appealed. Through the Ninth Circuit Mediation Program, the parties agreed to terms of settlement which included vacation of the summary judgments issued by this Court. The parties have so moved. Having carefully considered the papers submitted, the Court grants the motion to vacate.

## II.  BACKGROUND

This case originated with an action filed May 3, 2010, by Bedrock Financial, Inc., a California corporation ("Bedrock"), against the United States Internal Revenue Service ("IRS") in Merced County California Superior Court (Case No. CV001026). Bedrock, holder of a deed of trust to real property in Atwater, Merced County, California (APN 004-110-005) (the "property"), sought to be subrogated to an earlier mortgage so as to establish priority over a federal tax lien (Merced County Doc. No. 2007-057520) which attached to the property after the earlier mortgage but before Bedrock's deed of trust. The United States ("Government") removed the suit to this Court. The IRS was later dismissed, leaving the Government as the only Defendant. The Government answered Bedrock's suit, and filed a counterclaim against Bedrock and a third-party complaint against First American. The parties consented to the jurisdiction of a United States Magistrate Judge for all purposes, pursuant to 28 U.S.C. § 636 (c)(1).

On November 12, 2012, the Court granted Bedrock's motion for summary judgment, awarding it equitable subrogation and an equitable lien in the amount of $171,106.85. Next, on April 17, 2014, the Court granted the Government's motion for judgement against First American on conversion and waste claims. The Court found that First American wrongfully diverted $42,458.12 in loan proceeds that were subject to the tax lien, but that the Government had subsequently recovered a portion of the outstanding debt, leaving an approximate unrecovered balance of $24,354.75.

On June 6, 2014, the Court entered judgment in favor of the third-party plaintiff,

1  the Government, and against the third-party defendants, First American, in the amount of
2  $24,648.76 plus interest, and closed the case.

3  First American appealed the judgment on June 27, 2014, and on July 31, 2014,
4  the United States cross-appealed the judgment in favor of Bedrock. The parties engaged
5  in informal settlement negotiations, with assistance from a mediator from the Ninth
6  Circuit Court of Appeals, and reached a settlement. The terms of the settlement required
7  judgments ordered by this Court to be vacated. On March 25, 2015, Bedrock and First
8  American filed a motion to vacate orders pursuant to Federal Rule of Civil Procedure 60.
9  (ECF No. 151.) The Government filed a statement of non-opposition on April 3, 2015.
10 (ECF No. 153.) On April 22, 2015 the Court issued a minute order deeming the matter
11 suitable for decision without oral argument. (ECF No. 154.) The matter stands ready for
12 adjudication.

13 **III.    LEGAL STANDARD**

14 Pursuant to Fed. R. Civ. P. 60(b), a district court may "relieve a party or a party's
15 legal representative from a final judgment, order, or proceeding" for a number of
16 reasons.

17 In U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 29, 115
18 S. Ct. 386, 130 L. Ed. 2d 233 (1994) ("Bonner Mall"), the Supreme Court held that
19 appellate court vacatur of district court judgments in the context of settlement
20 agreements should be granted only in "exceptional circumstances." Those exceptional
21 circumstances "do not include the mere fact that the settlement agreement provides for
22 vacatur." Id. The Court emphasized the importance of considering the public interest
23 when contemplating the equitable remedy of vacatur: "Judicial precedents are
24 presumptively correct and valuable to the legal community as a whole. They are not
25 merely the property of private litigants and should stand unless a court concludes that
26 the public interest would be served by a vacatur." Id. at 26 (quoting Izumi Seimitsu
27 Kogyo Kabushiki Kaisha v. U.S. Philips Corp., 510 U.S. 27, 40, 114 S. Ct. 425, 126 L.
28 Ed. 2d 396 (1993) (Stevens, J., dissenting)). Thus, "quite apart from any considerations

of fairness to the parties," vacatur disturbs the "orderly operation of the federal judicial system" by deviating from the primary route Congress has prescribed for parties who seek relief from the legal consequences of judicial judgments: appeal as of right and certiorari. Id. at 27.

However, in American Games, Inc. v. Trade Products, Inc., the Ninth Circuit distinguished Bonner Mall by holding that district courts, due to the "fact-intensive nature of the inquiry required," enjoy "greater equitable discretion when reviewing [their] own judgments than do appellate courts operating at a distance." 142 F.3d 1164, 1170 (9th Cir. 1998). Therefore, a district court in this circuit may vacate one of its own judgments absent exceptional circumstances. See id. at 1168-69.

In determining whether to vacate a judgment, district courts must take into account "the consequences and attendant hardships of dismissal or refusal to dismiss" and "the competing values of finality of judgment and right to relitigation of unreviewed disputes." American Games, 142 F.3d at 1168 (quoting Dilley v. Gunn, 64 F.3d 1365, 1370-71 (9th Cir. 1995)). This analysis is appropriate where, as here, the parties seek to vacate a judgment following settlement. See Am. Games, 142 F.3d at 1169 ("[T]he district court below could have vacated its own judgment using [the] equitable balancing test even if [the parties] had mooted their case by settlement."). "The purpose of this balancing process is to enable a district court to consider fully the consequences of vacatur." Bates, 944 F.2d at 650; see Allard v. De Lorean, 884 F.2d 464, 467 (9th Cir. 1989) ("[T]he district court should balance the competing interests of the parties in order to determine whether the judgment below should be vacated."); see also Dilley, 64 F.3d at 1370 ("[T]he touchstone of vacatur is equity.").

Courts are not obliged to vacate a prior order at the behest of the parties in order to facilitate settlement. See Bates v. Union Oil Co., 944 F.2d 647, 650 (9th Cir. 1991). The Ninth Circuit has recognized that if courts were required to vacate prior rulings after settlement "any litigant dissatisfied with a trial court's findings would be able to have them wiped from the books." Ringsby Truck Lines, Inc. v. Western Conference of

Teamsters, 686 F.2d 720, 721 (9th Cir. 1982).

## IV.  ANALYSIS

The parties argue that vacatur will promote mediation and settlement. The Ninth Circuit and judicial policy have long-favored mediation and settlements. See Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.), 516 F.3d 1095, 1101 (9th Cir. Cal. 2008); citing Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982) (finding that "voluntary conciliation and settlement are the preferred means of dispute resolution"). The Ninth Circuit has developed a special mediation program that the parties utilized to resolve their differences in a global settlement.

As explained above, the Court is guided by equitable considerations in resolving whether vacatur is proper. In this case, several equitable principles favor vacatur. These include the general judicial policy favoring settlement, the Ninth Circuit's specific efforts to assist the parties to obtain settlement in this case, the parties' desire to conserve resources in continuing to litigate the matter on appeal, the judicial resources that further litigation would consume, and the fact-specific nature of the orders under consideration. As Bedrock and First American explain, the tax lien in dispute in this case will be released with the execution of the settlement, and there is no danger that a third party could challenge the validity of the lien, or otherwise re-litigate the issues presented in the case. (Mot. to Vacate at 4.) It is clear that the current dispute involves specific real property and a tax lien which would not be subject to other litigation.

Although under Bonner Mall "exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur," 513 U.S. at 29, in making its equitable determination, this Court should give some weight to the fact that the settlement is conditioned upon vacatur. Major League Baseball Props., Inc. v. Pac. Trading Cards, Inc., 150 F.3d 149, 152 (2d Cir. 1998) (relying in part on the fact that "the victor in the district court wanted a settlement as much as, or more than, the loser did"); De La O v. Arnold-Williams, Nos. CV-04-0192 EFS, CV-05-0280 EFS, 2008 U.S. Dist.

LEXIS 68334, 2008 WL 4192033, at *1 (E.D. Wash. Aug. 27, 2008).

Balanced against these considerations in favor of vacatur is the impact of vacating the orders on the orderly progress of litigation. Although a district court's order is not precedential, "there is a 'systemic' interest in preserving district court judgments because 'they play a significant role in the development of decisional law by providing guidance to private parties with respect to the availability of remedies and to litigation strategy,' and they 'can also be useful to the courts of appeals in rendering decisions." Philip Servs. Corp. v. City of Seattle, Civil Action No. H-06-2518, 2007 U.S. Dist. LEXIS 84237, 2007 WL 3396436 (S.D. Tex. Nov. 14, 2007) (quoting Cater v. Rosenberg & Estis, No. 95 CIV. 10439(DLC), 1999 U.S. Dist. LEXIS 131, 1999 WL 13036, at *3 (S.D.N.Y. 1999)). While the Court is not fully persuaded that the request is not a disguised attack by First American on the resolution of issues contrary to its position, the request is tempered by the fact that vacatur will not cause the orders to disappear: they will remain in electronic research databases, albeit flagged, but otherwise available for whatever guidance they may give to parties and other courts. NASD Dispute Resolution, Inc. v. Judicial Council, 488 F.3d 1065, 1069 (9th Cir. 2007) (citing United States v. Joelson, 7 F.3d 174, 178 n. 1 (9th Cir. 1993)).

The Court must also consider the public interest. Courts generally characterize this interest as "protecting district court precedents from 'a refined form of collateral attack . . . .'" NASD Dispute Resolution, Inc., 488 F.3d at 1068-69 (quoting Bonner Mall, 513 U.S. at 26). As this dispute is germane to the parties involved and facts and legal decisions relate to the specific real property in question and encumbrances thereupon, the Court is unaware of other public interests or third parties that would be negatively impacted by vacatur.

Considering all of the relevant factors, the Court finds the parties' desire to conserve their resources, the potential to conserve judicial resources, and the lack of harm to any public interests favor granting the vacatur.

///

## VI. ORDER

It is therefore ORDERED:

1. First American's Motion to Vacate Orders and Judgments (ECF No. 151) is GRANTED;

2. The Court vacates the following orders and judgments:

   a. The November 13, 2012 order granting Bedrock Financial Inc.'s motion for summary judgment (ECF No. 99);

   b. The December 3, 2012 judgment in favor of Bedrock Financial Inc. (ECF No. 104);

   c. The April 17, 2014 order granting the United States' motion for summary judgment (ECF No. 135);

   d. The June 6, 2014 order awarding damages and entering judgment (ECF No. 140); and

   e. The June 6, 2014 judgment in favor of the United States (ECF No. 141).

IT IS SO ORDERED.

Dated:   April 29, 2015                    /s/ *Michael J. Seng*
                                           UNITED STATES MAGISTRATE JUDGE